## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        :
**UNITED STATES OF AMERICA**            :
                                        :
**v.**                                  :        **Criminal No.:  1:21-CR-00243-APM**
                                        :
**JOHN LOLOS**                          :
                                        :
_____:

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant, John Lolos, by counsel, respectfully submits his Memorandum in Aid of Sentencing.

1.  **Background**

Mr. Lolos was arrested on January 9, 2021, pursuant to a criminal complaint charging him with Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority in violation of 18 U.S.C. § 1752 (a)(1)(2)(3) and (4) and Violent Entry and Disorderly Conduct on Capitol Grounds in violation of 40 U.S.C. 5104(e)(2)(D) and (G).  The charges arose from Mr. Lolos entering the United States Capitol building on January 6, 2021.  ("January 6") Thereafter, he appeared for an initial appearance in Magistrate Court in the State of Washington where the government did not seek pretrial detention.   After two days in custody, Mr. Lolos was released on his own recognizance subject to certain conditions which Mr. Lolos has continued to abide by in toto.  On March 23, 2021, The United States Attorney filed a four count information charging Mr. Lolos with four different misdemeanors including the count to which he has entered a plea of guilty and will be sentenced.

Mr. Lolos thereafter retained counsel who was directed by Mr. Lolos to seek to negotiate a plea on Mr. Lolo's behalf.   It took some time for the Government to be in a position to offer pleas in any of the January 6 cases but there is no question that Mr. Lolos almost immediately sought to take responsibility for his actions and plead guilty.   To that end, and as a predicate to the beginning of plea negotiations, Mr. Lolos met with the Government and answered all questions posed about his actions on January 6.   On August 4, 2021, Mr. Lolos appeared before this Honorable Court and entered a guilty plea to Count Four of the criminal information charging him with one count of Parading, Demonstrating, or Picketing in a Capitol Building in violation of  40 U.S.C. § 5104(C)(2)(G).   The Court, after accepting the plea, did not change his conditions of release and the government did not seek a modification of his bond.  Pursuant to the conviction, Mr. Lolos now faces a maximum prison term of six months and a maximum fine of $5,000 restitution, and a special assessment of $10.00.  The United States Sentencing Guidelines do not apply and Supervised Release is inapplicable.

Mr. Lolos hereby requests that the Court sentence him to a term of probation with no additional active incarceration.   Mr. Lolos is fully prepared to pay restitution as agreed to by his Plea Agreement in the amount of $500.00 plus a fine as ordered by the Court.   It is submitted that the requested sentence properly reflects the purposes of federal sentencing laws and is appropriate in this case as is described below.

2. **Mr. Lolos' Background and the Events of January 6**.

Mr. Lolos  is 48 years old with no criminal record.[1]  Before January 6, like millions of other American citizens, Mr. Lolos became a vocal supporter of then President Donald Trump.   Mr.

---

[1] The PSR on pages 6 and 7 refer to an 11 year old harassment charge that was dismissed over 10 years ago.  As such, Mr. Lolos has no criminal record for purposes of this sentencing and the Government's reliance on hearsay described in an unverified Complaint filed in 2009 to say Mr. Lolos has a history of violence is grossly unfair.  Mr. Lolos denied in 2009 that he ever threatened the woman who made the Complaint and the case was eventually dismissed.  Even

Lolos was especially animated by claims of voter fraud which he believed was rampant in the United States.   With that background, Mr. Lolos decided to come to Washington, DC, at the express invitation of the then President, to hear speeches and protest the rampant voter fraud that Mr. Lolos heard about on a daily basis after the 2020 presidential election.   Mr. Lolos travelled alone from Seattle, Washington to hear Mr. Trump's speech and thereafter began to walk towards the Capitol building, urged on by others who were leaving the scene of the speech and said they were going to the Capitol to protest. There is no doubt that Mr. Lolos was upset about perceived voter fraud and he followed the crowd as it made its way to the Capitol.   Once there, Mr. Lolos observed tear gas while on the West Capitol steps and he entered the Capitol, while carrying a Trump flag and an American flag, through a broken window following numerous other protesters. There is no allegation that Mr. Lolos broke the window.   He then spoke to a police officer inside the building and then entered the Crypt where he "waved his American flag and a Trump 2020 flag and chanted to protest alleged voter fraud." (DE 25, ¶ 14)   Lolos then decided to leave the Capitol after law enforcement arrived and told him to leave. (DE 25, ¶ 15)   Mr. Lolos then exited the Capitol and yelled "They left! We did it!"   He also waved his American and Trump 2020 flags. (DE 25, ¶ 16) [2]

The factual recitation above represents the entirety of the offense conduct in this case. While Mr. Lolos may have sent some texts that in retrospect plainly overstate his involvement in the events of that day, it is clear that Mr. Lolos did not engage in "battle" or make any moves towards the House or Senate chambers to interfere with the vote.   Unlike many others, Mr. Lolos

---

the Complaint itself, which is a mere allegation, discloses that Mr. Lolos never touched the alleged victim.   Mr. Lolos engaged in no act of violence on January 6 which is much more illustrative to the Court as to his character and a lack of propensity for violence.

[2] The Statement of Facts in this case and the Government's Sentencing Memorandum do not state how long Mr. Lolos was actually in the Capitol but it was a short period of time.

was not dressed for battle at all as is shown by the photographs the Government has shown the Court in its Sentencing Memorandum.   Indeed, the best evidence of Mr. Lolos' peaceful conduct on January 6 is that he was never charged with any assault or obstruction of Congress.  That is because it never happened.

As the Court evaluates Mr. Lolos' conduct in comparison to others who have plead guilty to this charge and may have been sentenced, there are numerous facts for the Court to consider that make this a case where a sentence of no additional active incarceration is necessary.  Mr. Lolos did not engage in any pre-planning whatsoever as it relates to illegally entering the Capitol at any time.   He came to Washington alone, was not dressed in any military garb, and was not coordinating with anyone on January 6.  He spent very little time inside the Capitol and committed no act of vandalism or violence while he was on Capitol grounds or inside the Capitol.   Mr. Lolos did not enter any private offices or rooms in the House or the Senate much less the Senate gallery or the House of Representatives.   He did not physically attack any law enforcement personnel or any other person.   He did not damage any property at the Capitol.   He has since made no inflammatory statements on social media or otherwise glorifying the events of January 6 other than the texts sent on January 6 which do not properly reflect his own actions on that date.   He immediately sought to resolve his case after he was arrested and has shown remorse for his actions by entering one of the first pleas of guilty in this investigation thus accepting full responsibility for his actions.

Mr. Lolos has also received support from several of his friends and associates who wanted to write to the Court.  Mr. Fragasso describes Mr. Lolos as a "hard working man of integrity. Ronald Williams describes him as a "great asset to his community never asking for anything in return for his kindness and generosity."  Lynn Babick writes to tell the Court that she is a disabled

veteran who has relied on Mr. Lolos for help when she needs it.  Steve Totorice has known Mr. Lolos for over 20 years and tells the Court that Mr. Lolos is "honest, reliable, respectful of everyone and a hard worker trying to be a good man and businessman.  He has never exhibited any violence or broken any laws and is an all around good man."  (These letters are attached as Exhibit 1 and are redacted as to personal identifiers.)

Of course, Mr. Lolos has admitted by his plea that he illegally paraded, demonstrated or picketed in the Capitol building.  For that conduct, he is to be sentenced on November 19, 2021. In fashioning a sentence, the Court must consider all of the factors set forth in 18 U.S.C § 3553 (a).  Those factors are well known to the Court but the critical factors in this misdemeanor case are (1) the "nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence to (A) reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) protecting the public from further crimes of the defendant.  These statutory dictates are to be considered along with the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553 (B)(6).

Application of these principles to Mr. Lolos personally and to the facts of this case supports the request that Mr. Lolos not be required to serve any additional term of active incarceration.  Mr. Lolos, other than an 11-year-old charge that was later dismissed, has had no prior involvement with the law and has no prior record.  Like thousands of others that day, Mr. Lolos  joined a mob that entered the Capitol.  He is responsible for his own actions and took responsibility immediately but the Court can take notice of the fact that thousands of other people entered the Capitol that day as part of a riot.   Unlike many others, Mr. Lolos committed no acts of violence that day and has

agreed that he unlawfully demonstrated in the United States Capitol.   There is no chance that Mr. Lolos can commit this crime again and the incarceration he has already suffered, in addition to adverse publicity[3] surrounding his arrest will serve to reflect the seriousness of the offense, the purpose of deterrence, to provide respect for the law and just punishment.

Finally, the need for "unwarranted sentence disparities" is critical in this case.   The Government gets to decide who it wants to charge with felonies and who it charges with Class B misdemeanors such as was deemed a sufficient charge in this case.  The Government also gets to suggest any lawful sentence that it deems appropriate in a particular case and clearly describes those various recommendations in its Sentencing Memorandum. But those recommendations are merely suggestions and the Courts in this district have imposed a wide variety of sentences from probation to jail in these misdemeanor cases.   The defense agrees with the Government when it argues that some of the sentencing factors in this case "support a more lenient sentence" than the requested 30 days.  (DE 32, p. 11)  This is certainly true and it is also correct that the Government is not asking for the maximum sentence allowed under the law which the defendant appreciates. The Government's detailed list of sentences already imposed for misdemeanor convictions arising from the events of January 6 include defendants who received no jail sentences and others who were given various jail sentences.  These sentences are all over the map but apparently  driven by individual Judges' consideration of the relative complicity, remorsefulness and actions of many different defendants engaged in roughly the same conduct.   Just today Judge McFadden gave a sentence of one month of probation, $500 restitution and a $4,000 fine to a defendant who engaged in quite similar conduct to Mr. Lolos.   United States v. Sean Cordon, 21-cr-0269-TNM.

---

[3] Certain media outlets published false stories that stated that Mr. Lolos had assaulted a police officer.   This is patently untrue.

(Statement of Offense describing entering the Capitol through a broken window and leaving, DE 24)(Exhibit 2)

While the Court has to review all of this information as to other sentences in context, in the end what must be decided is what is the proper punishment for Mr. Lolos given his own conduct. In this light, it bears repeating that Mr. Lolos immediately accepted responsibility for his actions and cooperated with the Government before his plea was entered.   He committed no acts of violence and damaged no property.   For these actions he has earned his misdemeanor conviction but there is no need or reason to add jail time to the consequences of these actions.

Dated:  November 12, 2021    **JOHN LOLOS**
**By Counsel**


_____/s/_____

Edward B. MacMahon, Jr. (VSB # 25432)
Edward B, MacMahon, Jr., PLC
107 East Washington Street
P. O. Box 25
Middleburg, Virginia 20118
(540) 687-3902
(540) 687-6366 (fax)
ebmjr@macmahon-law.com
*Counsel for John Lolos*

## CERTIFICATE OF SERVICE

I hereby certify that on November 12, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

_____/s/_____

Edward B. MacMahon, Jr. (VSB # 25432)
Edward B. MacMahon, Jr., PLC
107 East Washington Street,  P. O. Box 25
Middleburg, Virginia  20118
(540) 687-3902 - (540) 687-6366 (facsimile)
ebmjr@macmahon-law.com
*Counsel for John Lolos*